UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GARY GENE STANIS, | No. CV 08-6939-PLA |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

**PROCEEDINGS**

Plaintiff filed this action on October 21, 2008, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 21, 2009, and September 10, 2009. The parties filed a Joint Stipulation on July 2, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 7, 1968. [Administrative Record ("AR") at 81, 229.] He has a high school education [AR at 31, 137, 276], and past relevant work experience as a concrete pump operator, mechanic, dispatcher, and job site foreman. [AR at 45, 92-94, 97, 117-18, 134.]

On July 28, 2005, plaintiff filed his application for Disability Insurance Benefits, alleging disability since October 8, 2004, due to depression, lower back pain, and disc disease. [AR at 44-45, 52, 81-83.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 44, 52-57.] A first hearing was held on August 1, 2006, at which plaintiff did not appear. [AR at 44, 266-71.] Over plaintiff's counsel's objections, the ALJ declared plaintiff to be a non-essential witness, and conducted the hearing in plaintiff's absence. [AR at 44, 139, 268-71.] Plaintiff's counsel presented argument, but no testimony was received. [AR at 268-71.] On August 23, 2006, the ALJ determined that plaintiff was not disabled. [AR at 44-51.] Plaintiff requested review of the hearing decision. [AR at 69-74.] On February 23, 2007, the Appeals Council vacated and remanded the ALJ's decision. [AR at 75-77.] The Council ordered a supplemental hearing to consider whether plaintiff constructively waived his right to appear at his initial hearing, and if not, to offer plaintiff an opportunity to testify, to present updated medical records, and for the ALJ to take further action to complete the administrative record. [AR at 21, 35, 75-77.] A second administrative hearing was held on December 4, 2007, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 274-85, 291-93.] A vocational expert, a psychiatric expert, and a medical expert also testified. [AR at 285-91, 293-311.] On December 31, 2007, the ALJ determined that plaintiff was not disabled. [AR at 18-32.] Plaintiff again requested review of the hearing decision. [AR at 14.] When the Appeals Council denied plaintiff's request for review on July 23, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 9-11.] This action followed.

/

/

/

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had engaged in substantial gainful activity since October 8, 2004, the alleged onset date of the disability.[1] [AR at 24.] However,

---

[1] The ALJ noted that in August 2006, plaintiff returned to work as a porter, which he quit after one year because the driving "was just too much." [AR at 24.] The ALJ also noted that plaintiff then returned to work at his parent's concrete company, where he had worked prior to his back injury, in a new position entailing "leg work, such as driving and picking up things." [Id.] The ALJ found that plaintiff earned over $860 per month in 2006 and more than $900 per month in 2007, which showed that he had engaged in substantial gainful activity according to 20 C.F.R. § 404.1574(b)(2). [Id.] Plaintiff concedes that since August 2006, he has engaged in substantial gainful activity. [Joint Stipulation ("JS") at 2, footnote 1; JS at 12.] However, the Joint Stipulation also suggests that plaintiff

4

because the ALJ found that it was "questionable" whether there was a continuous 12-month period during which plaintiff had not been in engaged in substantial gainful activity, he continued his evaluation to step two.[2] [Id.] At step two, the ALJ concluded that plaintiff has the "severe" impairment of multilevel degenerative disc disease of the lumbar spine with some spinal stenosis at L1-L2. [Id.] The ALJ found plaintiff's depression did not constitute a severe impairment. [AR at 25-26.][3] At step three, the ALJ determined that plaintiff's impairment does not meet or equal any of the impairments in the Listing. [AR at 26.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work.[5] Specifically, the ALJ determined that plaintiff can, among other things, "lift twenty pounds occasionally and ten pounds frequently;" occasionally bend, stoop, kneel, crawl, pedal, and walk on uneven terrain; and, with normal breaks, stand and walk "for a total of six hours in an eight-hour workday" and sit "for a total of six hours in an eight-hour workday." [AR at 27.] At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work. [AR at 31.] At step five, based on vocational expert testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 31-32.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 32.]

/

/

---

is only seeking disability benefits for the period of October 8, 2004, until August 2006, when he "returned to SGA level work." [JS at 2, footnote 1; JS at 4, 12.]

[2] The ALJ also determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2009." [AR at 23.]

[3] Plaintiff does not contest this finding in the Joint Stipulation.

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[5] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in: (1) discrediting plaintiff's subjective complaints of pain and limitations due to his degenerative disc disease; and (2) not further developing the record. [JS at 4-7, 10-12.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ did not properly evaluate his subjective complaints and credibility for the relevant time frame. [JS at 4-7.] Specifically, plaintiff asserts that the ALJ erred in rejecting his subjective symptoms based on the lack of corroborating objective medical evidence, his daily activities, and his employment since August 2006. [Id.]

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly

identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[6] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's medical condition would reasonably produce some pain, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms to be "not entirely credible." [AR at 29.] The ALJ discounted plaintiff's subjective complaints of pain and resulting functional limitations because: (1) there was a lack of objective medical evidence corroborating plaintiff's symptoms; (2) plaintiff has engaged in work since the onset of his disability; and (3) plaintiff's daily activities were not limited to the extent one would expect given plaintiff's complaints of disabling symptoms and limitations. [AR at 29-30.] As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that they are neither clear nor convincing.

### 1. LACK OF CORROBORATING OBJECTIVE MEDICAL EVIDENCE

First, the ALJ determined that plaintiff's credibility pertaining to the severity of his pain and limitations was "reduced by the lack of objective medical evidence to substantiate his claims." [AR at 29.] While it cannot provide the only basis to reject a claimant's credibility, the absence of objective medical evidence to support a plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom testimony. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective

---

[6] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

7

medical evidence.") (emphasis added); see also Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider). "Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced . . . The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed. 2d 974 (1986)).

Plaintiff testified that he stopped working due to pain, explaining, "Pain is just, that's what I have to live with every day, all the time, constant. . . . I couldn't do much of anything let alone just walk the dog. . . . [I]t was just about a year and a half of just utter . . . pain and suffering." [AR at 280.] The ALJ found that "[plaintiff's] medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [AR at 29.] He discredited plaintiff's subjective symptoms because "no examining or reviewing physician has rendered an opinion fully supporting [plaintiff's] allegations." [Id.] To the contrary, according to the ALJ, "several [physicians found] him to be much more capable than he claims." [Id.] Specifically, the ALJ cited the assessment provided by the non-examining expert, Dr. Joseph E. Jensen, that plaintiff is "moderately limited in his functional capacities" [AR at 27, 302-03], and the opinion of Dr. H. Harlan Bleeker, a consultative examiner, who found, following a physical examination, that plaintiff is capable of light exertional work. [AR at 27, 233-36.] The ALJ also relied on plaintiff's treating physician, Dr. Asher H. Taban, who found him able to engage in "less

physically strenuous and mentally challenging work," rather than no work at all. [AR at 28, 170.]

The record supports the ALJ's finding of a lack of objective medical evidence to substantiate plaintiff's alleged pain and limitations. While the record contains objective medical evidence indicating that plaintiff suffers from degenerative disc disease [AR at 197-98, 208-09, 212, 233-36, 302], several physicians indicated that plaintiff was more physically able that he alleged [AR at 168-70, 175-79, 185-95, 233-36, 301-04], and no physician opined that plaintiff's resulting symptoms would be as functionally limiting as plaintiff alleges. Dr. Jensen testified that plaintiff has "multi-level lumbar spine degenerative disc disease," but found plaintiff retained the ability to lift twenty pounds occasionally and ten pounds frequently, walk and sit each for six hours in an eight-hour work day, and occasionally bend, stoop, kneel, crawl, and pedal, as well as walk stairs, ramps or uneven terrain. [AR at 301-04.] Further supporting the ALJ's finding of a lack of corroborating objective medical evidence is the report of Dr. Bleeker. [AR at 233-36.] From past MRI reports, Dr. Bleeker determined that plaintiff had "degenerative disk disease with mild central canal stenosis in the entire lumbar spine from L1 down to S1" [AR at 233], yet found that he could still "sit, stand and walk six out of eight hours, lift 25 pounds occasionally, 10 pounds frequently with no restrictions to his upper or lower extremities." [AR at 236.] Additionally, based on his examination of plaintiff, Dr. Taban concluded that plaintiff has "[c]hronic low back pain, secondary to multiple level degenerative disc disease and probable annular tear-protrusions." [AR at 169.] In prescribing a course of treatment, Dr. Taban did not say that plaintiff's condition restricted him from engaging in *any* work, however. Rather, Dr. Taban recommended an "adjustment in his type of work" and a "[c]hange of career to a less labor-intensive requirement" than that of a concrete contractor. [AR at 170.]

Although the record supports the ALJ's finding of an absence of corroborating objective medical evidence, that finding cannot stand alone as a reason to discredit plaintiff's credibility "concerning the intensity, persistence and limiting effects of [his] symptoms." [AR at 29.] See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[S]tatements about the intensity and persistence of [a claimant's] pain or other symptoms or about the effect [a claimant's] symptoms have on [his or her] ability to work" will not be disregarded "solely because the available objective medical evidence

does not substantiate [a claimant's] statements."). As discussed herein, the Court finds the ALJ's decision did not provide additional clear and convincing reasons for discrediting plaintiff's testimony regarding his symptoms.

### 2. PLAINTIFF'S DAILY ACTIVITIES

The ALJ also determined that plaintiff's daily activities negated his allegations regarding his limitations and degree of pain. [AR at 30.] Generally speaking, if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent [him] from working." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Engaging in some household chores or activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (benefits awarded on appeal to a claimant experiencing constant leg and back pain, despite the claimant's ability to cook and wash dishes); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). Here, in finding plaintiff's allegations regarding his limitations not totally credible, the ALJ asserted that plaintiff "does light household chores, handles the family funds, and pays bills," as well as meets parental responsibilities, "including taking his daughters to and from school, fixing them meals, and taking them to various appointments." [AR at 30.] The ALJ concluded that plaintiff's ability to engage in "essentially normal daily and social activities discredits his allegations of disabling symptoms." [Id.]

That plaintiff does light housework, attends appointments, fixes meals, and occasionally drives [AR at 95-100, 107, 172, 181] does not support the ALJ's finding that plaintiff could sustain gainful employment, because the ability to do these limited activities does not necessarily translate into an ability to do activities that are "transferable to a work setting." See Fair, 885 F.2d at 603 (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"); see also

Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). Further, the Court is not persuaded that plaintiff's ability to do the stated actions clearly undermines his subjective testimony. See Reddick, 157 F.3d at 722 (". . . claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Indeed, plaintiff indicated that he has to depend on his ex-wife to do "more than her share of care giving" of his daughters [AR at 99], and that he must take extended breaks while doing housework. [AR at 97.] Additionally, some of the documents cited by the ALJ as evidencing plaintiff's ability to engage in various activities [AR at 30, 98-101, 106-08, 172-74] corroborate, rather than discredit, plaintiff's subjective symptoms. For example, plaintiff's therapist, Howard Goodman, reported plaintiff was in such pain during a counseling appointment that he "was unable to maintain a seated position and had to lie on the floor during [the] session." [AR at 172.] Nor did the ALJ make any findings that plaintiff is capable of performing the listed activities repeatedly or for substantial periods of time without rest, or explain how the activities are transferable to the workplace. See Fair, 885 F.2d at 603. The ALJ also did not provide an explanation as to how plaintiff's ability to perform the listed activities is inconsistent with his claimed limitations. See Reddick, 157 F.3d at 722 (an ability to take part in some household tasks bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations). The Court therefore finds that the ALJ failed to provide clear and convincing reasons, based upon plaintiff's daily activities, for discrediting plaintiff's alleged limitations.

### 3. PLAINTIFF'S WORK SINCE THE ONSET OF HIS ALLEGED DISABILITY

The ALJ also cited plaintiff's return to work since the alleged onset date to discredit plaintiff's credibility regarding his pain and limitations. [AR at 30.] To properly reject a plaintiff's symptoms, the ALJ must provide reasoning "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). When properly supported by substantial evidence in the record, the ALJ's credibility determination is entitled to great deference by this Court, as the Court's "role is not to second-guess that decision." Fair, 885 F.2d at 603; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may look to a claimant's work

1 history to determine the credibility of the claimant's alleged limitations. See Thomas, 278 F.3d at 959 ("when weighing the claimant's credibility" it is proper to look at his or her "work record.") (quoting Light, 119 F.3d at 792). Here, however, without detailed explanation or reasoning, the ALJ found plaintiff's work to be "indicative of [plaintiff's] capacity for substantial gainful activity" and "an absence of credibility in [plaintiff's] allegations." [AR at 30.]

The Court finds the ALJ's reasoning for discrediting plaintiff's subjective symptoms based on plaintiff's work after August 2006, neither clear nor convincing. The ALJ provided no discussion about why plaintiff's work <u>after</u> the relevant period of October 8, 2004, to August 2006, made his testimony regarding his subjective symptoms <u>during</u> that period incredible. See Bunnell, 947 F.2d at 345-46. Instead, in finding plaintiff's assertion that he could not have worked incredible, the ALJ merely asserted that because plaintiff was working after that period, "[t]here is no evidence that [he] could not have worked more; on the contrary, [plaintiff] testified that he is currently working at his parents' concrete company." [AR at 30.] The ALJ's conclusory assertion, without reasons to support such a conclusion, is insufficient for this Court to find that the ALJ did not arbitrarily discredit plaintiff's testimony. See Orteza, 50 F.3d at 750. Although the Court will not decide herein whether plaintiff's "work activity subsequent to the closed period is irrelevant to the credibility determination," as argued by plaintiff [JS at 12], the Court does find that the ALJ failed to clearly and convincingly explain why plaintiff's return to work after the relevant period discredited plaintiff's credibility concerning his pain during that period.

"While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot affirm such a determination unless it is supported by specific findings and reasoning." Robbins v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006). The ALJ erred by failing to provide clear and convincing reasons for discounting plaintiff's subjective testimony. Remand is warranted on this issue.

### B. FAILURE TO DEVELOP THE RECORD

Plaintiff asserts that the ALJ failed to fully and fairly develop the record because the ALJ did not recontact Dr. Taban, the treating physician, to obtain an opinion about plaintiff's functional

limitations. [JS at 11.] Plaintiff asserts that without this opinion, both the non-examining expert's findings, which were based in part on Dr. Taban's reports, as well as the ALJ's finding that no physician fully supported plaintiff's claims of functional abilities, are improper. [Id.]

If there are ambiguities or inadequacies in the record concerning medical treatment or diagnoses that may affect the determination of disability, the ALJ has a duty to further develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). When medical records are inadequate to determine whether a claimant is disabled, the ALJ must recontact the medical source, including the treating physician if necessary, to clarify the ambiguity or to obtain additional information pertaining to the claimant's medical condition. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (internal citation omitted); see also Thomas, 278 F.3d at 958. The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). The Court finds that the record was neither inadequate nor ambiguous with respect to the medical information provided by Dr. Taban, and the ALJ was not required to recontact Dr. Taban to obtain additional medical evidence or opinions.

The information provided by Dr. Taban concerning his treatment and evaluation of plaintiff was adequate and unambiguous, such that the ALJ had sufficient medical evidence to evaluate the extent of plaintiff's alleged disability. The record contains a report written by Dr. Taban, dated November 3, 2004, detailing a "neurosurgical evaluation and possible further treatment plans" for

plaintiff. [AR at 168.] The evaluation described plaintiff's work and medical histories, symptomatic pain related to his degenerative disc disease, and the results of a physical examination. [AR at 168-70.] The report also detailed the results of a "radiographic review" of an MRI scan revealing, among other things, broad disc herniation. [AR at 168.] Dr. Taban also described his neurological examination of plaintiff, which included, among other things, "[i]ndividual muscle testing" of the upper and lower limbs, a "lower extremity exam," "pinprick testing," and an examination of plaintiff's ability to walk. [AR at 168-70.] Dr. Taban did not recommend surgery, but rather recommended a less-intrusive epidural steroid procedure, which plaintiff later completed. [AR at 167, 170.] Dr. Taban's evaluation was detailed and his conclusion is supported by evidence from his own examination, as well as by other physicians' statements. [AR at 168-70, 175-79, 186-95, 233-36, 301-04.] Plaintiff does not challenge Dr. Taban's examination or findings, nor does he allege that they were based on unacceptable diagnostic techniques. Instead, plaintiff apparently contends that Dr. Taban's report is incomplete, because he did not provide a formal analysis of plaintiff's functional limitations. [JS at 11.][7] Although Dr. Taban did not submit a formal functional limitation evaluation, the Court finds plaintiff's assertion that the record does not "contain an opinion from a treating source" regarding plaintiff's functional limitations [JS at 11] to be not entirely accurate. After describing his examination of plaintiff, Dr. Taban noted plaintiff's subjective symptoms, including "chronic lower back pain," and recommended that plaintiff "change [his] career to a less labor-intensive" one. [AR at 170.] Dr. Taban's recommendation therefore indicated his medical opinion that plaintiff was capable of working, albeit at a "less labor-intensive" position. Since there was adequate and unambiguous medical evidence for the ALJ to make an informed disability determination, including Dr. Taban's medical opinion about plaintiff's limitations, the ALJ was not required to recontact Dr. Taban to obtain additional medical evidence or opinions. Remand is not warranted on this issue.

/

---

[7] The ALJ likewise noted that Dr. Taban "did not submit a medical source statement of [plaintiff's] functional abilities, [but] he did recommend that [plaintiff] change his career to a less labor intensive requirement." [AR at 28.]

14

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to reconsider plaintiff's credibility concerning his limitations during the relevant period of October 8, 2004, to August 2006. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 11, 2009

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE